Next up is U.S. v. Martin Mizrahi. May it please the Court. My name is Chris Mann and I represent Martin Mizrahi, who does not appeal his conviction but he does challenge his sentence to the extent that it rests upon a judicial finding that he laundered drug money. The government's substantive and conspiracy to commit money laundering charges have a duplicity defect in that they charge that each count was committed in three different ways through separate sets of transactions involving the proceeds of credit card fraud, bank fraud, and drug trafficking. The jury was told to convict if it found that any one of these three theories was proven and the jury returned a general verdict. So we do not know which theory it accepted. Ordinarily, duplicitous charges are a concern to the defense because they create a risk that jurors may convict without being unanimous as to any particular crime that occurred. Judge Ed can solve that problem through unanimity instructions and that's why Mr. Mizrahi does not challenge his convictions on appeal. Counsel, if the law is that you don't need a jury finding or a finding beyond a reasonable doubt for the factual predicate for forfeiture, does it matter that the forfeiture count here was not specific? In other words, whether it was from one of the two fraud schemes from the wire fraud, bank fraud, or money laundering of narcotics. So if there's no jury finding, if we were to, well this court has found that in the Supreme Court, you're asking us to overturn this court's precedent, correct? On the printing issue, we have been, but on the forfeiture issue, it's a statutory issue as well. Because under 18 U.S.C. section 982, the government has the burden of showing that any property they want to forfeit was involved in the alleged offense or involved in the offense of conviction. And here we don't know. Right, but I'm not asking about whether there is an adequate finding by a preponderance of the evidence. My question is, you have conceded, at least if I'm reading your argument correctly, that this court and the Supreme Court has held that there is no requirement that there be a jury finding or a finding beyond a reasonable doubt of the factual predicate for the forfeiture. Yes, as far as the apprendi argument, the Supreme Court and this court, this court anyway has held, does not view apprendi as being applicable. But all of the court precedents have always held that in order to get a forfeiture under section 982, the government has the burden of proving the property that they seek to have forfeited was involved in the offense. Right, the nexus, the nexus. But that doesn't need to be beyond a reasonable doubt, correct? Well, but the offense of conviction does. And so here, I think Mr. Klein will concede that if the government had solved this duplicity problem by they charged three schemes in three different counts, they said count one, you laundered money from credit card fraud. Count two, bank fraud. Count three, drug trafficking. And if the jury had come back and said, convict on bank fraud, but acquit on drug trafficking, that cash money would be. But he was never charged with actually dealing drugs. No, he wasn't. He was only charged with money laundering. And so the money laundering count encompassed the two substantive wire fraud, bank fraud counts, and then also charged that he, all the monies he laundered were both proceeds from the wire fraud, the bank fraud, and then narcotics trafficking. And I guess I'm missing. Help me understand your argument, because I'm not quite following you. If you concede that the case law in the circuit in the Supreme Court is that there need not be a jury finding of the actual. Your Honor, I think we're sort of conflating two different issues. We agree on the apprendee question, but what we still maintain is that the jury must find that the offense occurred. And we're talking about three different offenses in one. So you're saying in order to be found guilty of money laundering, proceeds of any particular offense, you have to also have committed the underlying offense? That's in essence what you're saying.  No, Your Honor. Not at all. So what I'm saying is that Mr. Mizrahi received money from what the government called three buckets. He got credit card money, he got wire transfers from banks, and he got separate bulk cash that was used that the government claimed was drug trafficking money. If the jury found he took the wire fraud money and he laundered that, then the government can go and seek forfeiture of that. But they can't say if the jury found he laundered bank fraud money, but he didn't launder the bulk cash as drug trafficking, they can't go after that money and say that's part of the same offense because it's not. But that's not what the law requires, counsel. And that's what I'm struggling with. And you've even conceded that, unless, of course, we went on bonk to reverse it or the Supreme Court would. No, Your Honor. That's only on the apprendee issue. This is a separate issue. Under 982, it's got to be the property has to have the nexus to the offense of conviction. So the question for you is what is the offense of conviction? And that tricky part here is that the government had three offenses rolled into one. And so just because they found that he laundered the bank fraud money, the money that came in by wire, that does not reflect a jury finding that he laundered the bulk cash. So they could seek forfeiture of the wire transfer money but not of the bulk cash. And I think that would have been clear had they done the normal course and charged these money laundering schemes separately and said, you know, count one is bank fraud. He is laundering bank fraud money. Count two is laundering drug trafficking money. If they convicted on one and not the other, they couldn't seek forfeiture of both. Counsel, counsel, how do you respond to there have been multiple cases and in 2007 Justice Sotomayor, now Justice Sotomayor, while sitting on this court, issued an opinion that states, in essence, because criminal forfeiture does not implicate the Fifth and Sixth Amendments, a district court is only required to determine by a preponderance of the evidence, and she cited Capoce, the case of Capoce, whether the property subject to forfeiture bears the requisite nexus to the offense of conviction. Your Honor, Capoce is an excellent case for us because in that case they actually struck, Justice Sotomayor struck down a forfeiture of money that was outside of the scheme. What she said, what the holding of the court in that case is, is when there is a conviction for a scheme, like if they had convicted of bank fraud or of credit card fraud, then it would be, it would allow the district court to consider how many credit card transactions were there, how many wires came in, and you could seek forfeiture of that. But here there's a separate scheme. So when it's property that's subject to forfeiture outside of the scheme of conviction, it doesn't count, which is why in that case Justice Sotomayor eliminated certain funds that were like predated the alleged scheme. But here there are three schemes. The government always argued there were three schemes. They argued that Mr. Mizrahi's involvement was that he laundered on the back end each of these three schemes. The problem is the court can't assume that because the jury was told you can convict on any one of these schemes, that it convicted on them all. So the jury, if the jury found that he laundered bank fraud money that came in by wire, that does not allow a forfeiture to be made for the bulk cash. It's separate money. And Mr. Mizrahi traded in Bitcoin all the time, which is what this involved. The bulk of the transactions the government doesn't contest were completely lawful. This is what he did. He was a Bitcoin miner. He traded in it. Most of it is uncontested. Well, counsel, I think I understand what you're arguing to us. Unless there are further questions, you're now over time, but you have reserved two minutes for rebuttal. Thank you, Justice Sotomayor. Thank you. Good morning, Your Honors. May it please the court. My name is Ben Klein. I'm the Assistant United States Attorney. I represent the government in this appeal. I was also counsel for the government below. Let me jump directly into the court's questions about the scope of the forfeiture in this case. As the indictment reflects, Mizrahi was charged with engaging in a scheme with others to launder money from multiple different sources. Trial evidence showed that that's exactly what he was doing. He was working with the same co-conspirators to get money from multiple sources, including cash and wires, and he was using the same means and methods to turn that money into Bitcoin, which he then sent to wallets that were supplied to him by the same co-conspirator. Based on this conduct, he was convicted of money laundering conspiracy as well as substantive money laundering. And once he was convicted, as Judge Kahn noted, it was then up to the district court under this court's cases to determine whether the property that the government sought to forfeit had the requisite nexus to the underlying scope of conviction. The question was whether the duffel bags of cash that he was getting from a co-conspirator was connected to the money laundering scheme. On appeal, Mizrahi argues for the first time that the jury should have been required to make specific findings as to each of the underlying specified unlawful activities or SUAs. That is not required under the law. There is no federal crime of drug money laundering or of wire fraud money laundering. As a panel of this court, including Judge Kearse, found in the Stavroulakis case, the crime is money laundering. That's exactly what Mizrahi did here. He conspired with others to launder illegal money from multiple sources, and Judge Etkin didn't commit any error, let alone a plain error, in finding that that cash was properly subject to forfeiture. In terms of the nexus that the court was required to find by a preponderance of the evidence, can you just briefly list what evidence the government is relying on that the court supported the court's finding by a preponderance of the evidence that Mr. Mizrahi, that those funds that he trafficked, that he laundered relating to narcotics ties to, I believe, the bulk of the amount here? Of course, Your Honor. Two witnesses testified that the money had come from selling drugs and that Mizrahi was told about that, that he knew it. In talking about the source of the cash, one of the cooperating witnesses, Sevaid, specifically testified, this is available at Appendix 178, that a co-conspirator told him he was selling, quote, cocaine and he had rooms full of money. There were e-mails and texts with cartel associates. There was evidence about the use of a counter law enforcement measure involving a preselected bill during one of the cash pickups, which an expert testified is common to cartels. Coram, another co-conspirator testified, and this is available at Appendix 1092, about seeing a ticket that was issued to a cash courier whose money was seized by police and that, quote, the code and section related to seizures of money related to illicit drug or illegal activities. There was also significant evidence of threats of violence and actual violence. There was evidence that Mizrahi was told about these threats. There was a text message sent to Mizrahi. Is that when an associate of Mr. Mizrahi allegedly kept some of the proceeds and then the co-conspirator told him he would protect him from the cartel? That's exactly right, Your Honor. So the co-conspirator texted Mizrahi, and this was introduced at trial, that he had protected Mizrahi because these people wanted to come to his home and to his office. And as the court noted, one of Mizrahi's associates stole almost half a million dollars in cash, and Mizrahi admitted that instead of going to the police, he agreed to help collect that money, that he collected $380,000 in stolen cash, and that he kept that money. There was also the nature of the transactions themselves, which made no economic sense. There were multiple middlemen who were getting cuts of the money, driving it over to Mizrahi multiple times a week just to convert it into bitcoin. Under any standard, these facts are more than sufficient to support the district court's findings. Certainly taken together and viewed in the light most favorable to the government, as the court looks at it here, there is no clear error in the district court's findings. Unless the court has further questions, we would progress on our submissions. Seeing none, thank you, counsel. Thank you, Your Honor. Attorney Mann, you have reserved two minutes for rebuttal. Yes, Judge Kahn. I want to return to the issue about what the nature of the offense is. As the Supreme Court noted in Mathis v. United States, if you look at the fact that conviction has occurred, that identifies what the conviction was for. But the underlying ways in which it was committed, that kind of forms out what the nature of the offense is. And here the government alleged that this offense happened in any number of one of three ways. And we don't know which one the jury accepted. If the jury found that all that Mr. Mizrahi did was receive the bank fraud proceeds, and he laundered that money from the wire transfers, it doesn't mean that everything that he ever did with buying bitcoin is subject to the same offense. The jury could very well, in this case, have said, I do not believe that Mr. Mizrahi laundered drug money. I do believe that he committed laundered bank fraud money and convicted on that basis. And so then for a judge to step in and say, no, no, no, what the jury really found, that the nature of this offense is, is that it included the drug trafficking, and I'm going to allow you to seek forfeiture of that as well, that usurps the role of the jury, both under the statute, under Section 982 that must look to what the nature of the offense was, but also usurps their Sixth Amendment function of allowing the jury to define what the crime is. And, Your Honor, that's separate from our Apprendi issue. Under this court's precedent, once they found a scheme, like if they found that he engaged in credit card, laundered credit card fraud money, the judge would be allowed to go through and parse out and calculate how many credit card transactions were actually laundered. And we argue under Apprendi that that has to be done by the jury, not the judge. But that's a separate question. We're addressing the first step. What was the offense of conviction? And we don't know whether it included drug trafficking, and I think that's fatal to the government's claim because it's their burden. And they normally address this in one of two ways. They could either charge a drug money laundering via drug trafficking as its own count, in which case a conviction would say, yes, we found that that occurred, and any money involved in it can be forfeited, or you would do it like a normal charge where you go through and ask for special interrogatory. Did you find that he committed money laundering, drug trafficking proceeds, et cetera? And they didn't do that, and that's not our burden. If they're going to want to go beyond the conviction and seek forfeiture of money, they need a jury finding that Mr. or Ms. Rahim laundered drug trafficking money, and they didn't ask for it, and we don't know. Thank you, counsel. Thank you, Your Honor. The sides will reserve decision on this matter. The next matter on the docket is Derek Josey v. Correctional Officer Dustin Bell. Thank you. The appellant is presenting its case on submission. That was a late request received by the court yesterday. And I see Attorney Patrick Woods. The court received your response to the request, and you have 10 minutes, counsel. You may proceed. Thank you, Judge, and may it please the court. Patrick Woods on behalf of the appellees. In light of my opponent's submission and the very straightforward nature of the merits in this case, I'm not going to say more on the merits unless the court has questions related to some aspect of the merits. Otherwise, I primarily wanted to make sure I was here to answer any questions or concerns the court might have about the Supreme Court of the United States's intervening decision in Purtue. The bottom line is twofold there. First, Purtue doesn't apply to the facts of this case. Purtue requires intertwinement between the merits facts and the facts related to exhaustion of administrative remedies. Here, there's no overlap between those two. The question of whether he was denied Ramadan services, the merits question, is entirely separate from whether he was able to file grievances related to that question. So the court's longstanding rule in Mesa v. Gord that allows a hearing to be determined by a judge is the appropriate rule. And two, the court doesn't need to say anything about Purtue at all if it doesn't want to, because it was never raised at any point by appellant here. There's never been any challenge to the propriety of holding the hearing in this case. And there have been multiple opportunities for appellant to do so, even after Purtue was decided by the Supreme Court, was decided before the reply brief deadline. There was no reply brief. I submitted a 28-J letter on it. There was no response to that, and they're not here today. And in their submission last night or late yesterday afternoon, they indicated they didn't have anything to add to their briefing. I just have one question. I appreciate you did not file the blue brief, but it says at the bottom of eight, Plaintiff appellant's arguments are reviewed for plain error. I'm not sure that's so. And who would be in a position to say? I mean, I would say that that plain error is not the correct standard. Clear error is the correct standard here. Yes. I don't have an explanation for my party opponents. It's not your brief. I just was wondering. No, it would be review for clear error of the district court's findings here. The factual findings. The factual findings. A de noble review of the grant of summary judgment. Correct. But the factual findings here were that he was not credible, and there's nothing to support his side of his opposition to summary judgment on the exhaustion issue. The statement in the brief is that the arguments are to be reviewed for plain error. It doesn't focus on the findings. I don't know how you review arguments for plain error anyway. I don't have an answer for that one, Judge. Perhaps you can let the author of the review brief know that you were asked this question by the court so that they can benefit from what you've had to respond. So he should be happy that he's not here. I would hope that he will also listen to the recording of the argument today. Thank you. Thank you, counsel, and thank you for attending today's argument. We will reserve decision on this matter, and I believe the final matter for argument today is the matter of Marina Perez v. David C. Banks, New York City. Thank you.  It's still good morning, Attorney Moon. I'm sorry, Attorney Lancia. Nicole Lancia. Nicole Lancia. May I please report? Thank you. You have reserved two minutes for rebuttal. You may proceed. I represent the appellant, Marina Perez, on behalf of her child, a child with disabilities, C.P. We are seeking a reversal of the district court's denial of the plaintiff's motion for summary judgment and ask that this court award C.P. compensatory education in the form of extended eligibility to receive special education services at iBrain, the school that he attends, for four years until the age of 25. Now, the district court's decision was clearly erroneous for a few reasons. It was based entirely on a perceived nonexistent agreement, lack thereof, between the impartial hearing officer's decision and the state review officer's decision. Essentially, the district court believes that by not addressing and not stating that there was no, that there was a gross violation of the IDEA, that they both had found that there was no gross violation of the IDEA. Do you concede that there needs to be a finding of a gross violation in order to award compensatory damages? No, Your Honor. Compensatory education services, compensatory education may be awarded where there is a gross violation, but my understanding of the case law is that where there is a denial of the fate, based on the state officers, such as the IHO's broad discretion in fashioning remedies, that compensatory education and or extended eligibility are appropriate remedies. What case do you have that stands for the proposition that you don't need a gross violation? Yes, Your Honor. I believe that that was in, just looking at our brief. You can, you know, let us know on rebuttal. Let us know on rebuttal. I don't want to take your argument time. I do have one, two, hopefully quick questions. If I can ask them. Oh, in the case, well, it's under the statute, 1415 subsection I2C3, 34 CFR section 300, 516C3, and also the school committee of the town of Burlington. But do you have a case that stands for the legal proposition that you don't need a gross violation? Oh, that you don't need a gross violation? Yes. I don't have a case that specifically states that. Okay. This case is heart-wrenching from, you know, any angle that you look at because of, you know, it's just incredibly difficult, I'm sure, for both sides. My, I have two very quick questions. One is, do you disagree that both, neither the hearing officer nor the SRO, the IO or the SRO, found a gross violation, explicitly found a gross violation? They did not find either way whether there was or was not. That was not stated. There's no mention of a gross violation? Correct. I do have a question just, and if I'm going outside of the record, please don't answer it. But it's my understanding that once an appeal is filed like this, there is an ability to have extended eligibility for I-BRAIN. So has this appellant or the CP continued to receive services at I-BRAIN on an extended eligibility, either until the age of 23 or because there has been a, there's a term they call suspension or something like that. Can you? I'm actually not sure whether it was ever implemented and whether the student has received the extra four years of extended eligibility. No, I'm asking whether he's currently there. But perhaps the Board of Education or the city can address that question. Sure. I'm sorry, go ahead. No, not a problem, Your Honor. Apologies, but I don't have that information. So to, I believe, Your Honor's point, regardless of whether there was not a finding that there was no gross violation, under the standard of review, we would still submit that the district court clearly erred in one finding that there was some agreement between the two state officer, the state review officer and the IHO when there wasn't, and then blindly deferring to the SRO's decision, even though, one, it was not the decision and the conclusions that the district court made and then the SRO made were not matters of educational policy, so no deference was owed, but also the IHO's decision was the more well-reasoned decision, and the court, if it was going to defer on any question, it should have deferred to the IHO's decision. Now, of course, Your Honors are aware that Your Honors reviewed the record de novo and reviewed the district court's factual findings for clear error, which we submit that that does exist here, because as Your Honor pointed out, there was no such agreement, there was no such finding either way as to a gross violation, and we submit that gross violation is not necessary. But I guess to that extent, if this court were to disagree and to say, yes, there must be a finding of a gross violation in order for the IHO, the SRO, or the district court to have been able to even fashion a remedy granting the plaintiff's request, then in the alternative, that issue should be remanded to the district court, who should then remand it to the IHO to actually address that issue specifically. For our purposes, is there a difference between compensatory education and extended eligibility? Yes, Your Honor. There is a distinction that we highlighted in our brief and I believe was addressed in the underlying decisions as well. Compensatory education services are the educational programs or services that can be provided to a student after their eligibility for special education has already expired. So it's prospective equitable relief to remedy an earlier deprivation or denial of free appropriate public education, such as what happened in this case. Extended eligibility extends the school district's statutory obligations to provide special education to the student. So it's an obligation to, on an annual basis, hold a CSE meeting and develop an individualized education plan for the student. So they're separate in that regard. However, as was the case here by the IHO and what we're still requesting here in seeking the court's reversal of the Southern District's decision, extended eligibility for four years until the age of 25 may be a form of compensatory education. But those two terms are distinct. Could you address, please, the statute of limitations issue, which seems to be a matter of four days? Is it? Yes. So my understanding is that... What's the statute of limitation issues? Do you mean the one that was considered by the... Two years from discovery of a gross violation. Okay. Yes. So my understanding is that, as the IHO found and the IHO, I guess, misapplied, misinterpreted it, the plaintiff was found to have been barred in raising her legal claims as to the denial of a fate for all of the school years up until the 21-22 school year. But that doesn't mean that the facts underlying the DOE's denial of a fate, namely its failure to evaluate CP, to diagnose the cortical vision impairment, which resulted in denial of fate even for the 21-22 school year, doesn't mean that those facts cannot be considered, even if the legal claims that DOE had denied a fate for each of those school years were time-barred. I see my time... Are you challenging even the hearing officer's finding that those claims were barred by the statute of limitations? No. So from, I believe it was 2007, 2008, 2018, 2019, academic years? I don't believe in this appeal that that is being challenged. I believe the plaintiff made those arguments below. But because she was ultimately awarded the extended eligibility until the age of 25, that's not something that could have been appealed to the SRO, so plaintiff didn't appeal that. Well, you could have appealed the finding for the compensatory damages, right? Yes, Your Honor. Yes, that was appealed to the IHO. Here, the IHO had denied the plaintiff's request for compensatory education services, and we're saying here that CP is entitled to those. So, yes, we are arguing that. All right. I didn't think that you had appealed the statute of limitations issue. Not the statute of limitations issue, no. And so both the hearing officer said, as to those years the statute is run, I can't award compensatory damages as to those years. You didn't appeal that aspect of the ruling? No, not the IHO's denial of the request to award tuition reimbursement for those years, no. Thank you. Good morning, Your Honors. May it please the Court. Chloe Moon on behalf of DOE. The District Court correctly upheld the SRO's decision denying compensatory education to the plaintiff. We think the best way to look at this, and I think this might get at some of the policy that was already happening this morning, is in two parts based on the two separate due process complaints that were initially brought, those for the earlier years, which the IHO found to be barred by the statute of limitations and which plaintiff never appealed and so has abandoned, and the 2021-22 school year. So there were two separate complaints filed? Yes, Your Honor. And then they were joined? They were consolidated. And the IHO dismissed the one for the earlier years? Correct. And proceeded on the second complaint? Yes, Your Honor. I apologize. And the one for the earlier years was the only one that sought compensatory education. The claim on 2021-22 didn't even seek compensatory education. It only sought full reimbursement at I-BRAIN, which is exactly the relief that was rewarded here. And the services at I-BRAIN the plaintiff has conceded were the full services that the student needed. You can understand how compelling this is. And try to look through the record. Again, I don't want to go outside of the record of when. There was some reference that mom didn't think the child needed vision screening earlier on, couldn't exactly determine when. We know that I-BRAIN from the current record appears to have found this cortical vision impairment. And that the 2021 was asked to services for that, to address that issue. And there was a rejection of not providing musical therapy or something, but that seems to have been abandoned. It's unclear how long a condition like this can exist. When it was first detected, when it was first, certainly it was first learned when mother, when the plaintiff here has her child, then child, now adult, young adult evaluated. I guess I'm trying to understand why if the court doesn't find, if the I-O didn't find a gross violation expressly, why isn't there enough to find gross violation implicitly? Because the hearing officer seemed to say this is so fundamental a problem that it has impacted the child's education. And therefore, for compensatory relief, we should extend eligibility to 25, not 27 or 28 as mom requested. I think the problem goes back to the statute of limitations finding here. Because we didn't get an adjudication of what the services that were deprived of for those earlier years. We don't know specifically how inadequate any of those services were because those claims were dismissed as a whole. But we know there were never services given for this condition, correct? So is the fact that the hearing officer found this to be so fundamentally impactful to this young adult's ability to make progress, that that should warrant compensatory damages longer than just the year? I think the problem here is that it's a mismatch between the complaints that were barred by the statute of limitations and for which compensatory education was sought, and the only year that they actually have a surviving claim for which all services were provided. And I could see a situation in which there was a continuing violation with no break like we have here. We have a break between these two periods. But that's just not this case where you're getting a full reimbursement at a private institution. So there's not even no gross violation. There's no violation for the year that is still in the case. I understand your argument that one year of not addressing a vision problem doesn't warrant four years of compensatory damage or compensatory relief for eye-brain school. Can I ask you just practically if it's a matter? I know it's in the record that there was a request to continue paying for eye-brain during the pendency of the hearing. Has that occurred? I do not know, and I apologize. I don't have it in my knowledge of the record. Is there an ability to get extended? And I did inquire. This matter went to camp, and it could not be resolved in camp, the mediation? Yes. Okay. Is there a way for Ms. Pérez to request extended eligibility for CP until the age of 23? Because there seems to be a separate mechanism for doing that. And is that still available? I'm not sure, Your Honor. I mean, I think the problem here is, again, the due process complaint for the 2021-22 year. There are two different forms of compensatory education. There's the educational programs or services at the district's expense after special education expires otherwise, and there's the form of extended eligibility, extending statutory obligations. Part of the problem here is that the IHO's finding of allowing for further compensatory education is kind of conflating those two, because it's providing extended eligibility without the continued IEP process, the CSE input, and just placement purely at I-BRAIN. So that's part of the problem here is we have not only duplicative remedies with respect to full tuition reimbursement at I-BRAIN, there's also a duplicativeness of the extended eligibility award here that doesn't make perfect sense based on this record. And I just say, as to the visual services, because those weren't adjudicated, again, because of the bar of statute of limitations, we just don't have the record development here for any of the claims that they are now trying to bring in through a challenge to a statute of limitations bar that they never appealed and have abandoned. Unless this court has any further questions, we ask the court to affirm. Seeing none, thank you, counsel. Thank you so much. Attorney Lancia, I believe you reserve two minutes for rebuttal. Thank you. Thank you, Your Honor. I just want to address a few points raised by opposing counsel. And I think it goes to Your Honor's question pointed at the issue of whether there was a finding of gross violation of the IDEA. That's correct, there was no explicit finding. But I think what Your Honor may have been getting at is that, as thoroughly and adequately discussed at length in the IHO's decision, she went through how CP should be much further along than he was currently. Given his advanced age, it would be difficult for him to ameliorate the existing delays caused by DOE's failure to properly address his CBI. He's entitled to significant remediation. And then ordering and awarding extended eligibility for four years until the age of 25. I think the reasonable inference to draw from that is that there was a gross violation, even if it wasn't explicitly stated. I think that this court would be well within its discretion and within the bounds of logic and reason to find that that was implicitly, at a minimum, a finding. As to opposing counsel's argument that the claims for extended eligibility and compensatory education services, you know, basically would not, or actually were duplicative. They're not duplicative remedies, because as I was explaining in answering Your Honor's question earlier regarding the difference between compensatory education services and extended eligibility. One is the actual programs and services that would help provide the significant remediation and amelioration of the existing delays caused by DOE's failure to diagnose this problem of deficit for 12 years. The problem is that I didn't see in the record when this condition, we're assuming it was for 12 years. There's nothing in the record. Is there anything in the record, because I couldn't find it, that says when this condition began? Not when it was diagnosed. I know it was diagnosed by someone at Eyebrine. But when it began? I'm looking at the IHO's decision to see when the CBI began. I don't know that that was a finding of fact, but it is a finding of fact in page 26 of the appendix that the DOE was aware that the student had received vision education services from ages 6 to 7. From ages 6 to 7. Right. So there was an awareness that there was an issue. But I think... So I might have missed... Excuse me. What's the sentence that precedes what you just read? I'm sorry? Oh. This is part of... This comes from the Pro 56.1 statement. It's also quoted on page 4 of your brief. What's the sentence that precedes the part that says the DOE was aware of this when he was ages 6 to 7? The school psychologist confirmed that the DOE did not recommend vision education services because the mother said her son's vision was okay and was improving. Yes. The mother is not a medical expert, nor should she have been expected to be, which is well settled. And the problem really is that DOE did not conduct its own evaluation of CP, which it was required to, as part of its statutory obligations in convening the CSC and doing an individualized education plan on an annual basis. So I hope that answers your honors questions. I know that my time is up, so I just want to briefly conclude by asking this court to recognize the atrocious failure on the part of the DOE to diagnose this CBI, which in failing then to recommend vision education services has delayed this child's development and education so much that really the best remedy... To the extent that it's even sufficient to try to ameliorate the problem, really is to award the extended eligibility until the age of 25 and find that CP is entitled to compensatory education services and reverse the district court's denial of plaintiff Marina Perez's motion for summary judgment. Thank you. Thank you, counsel. Thank you to both sides. We'll reserve decision on this matter. That concludes the arguments for today. So I want to thank our courtroom deputy, our CSOs, and I'll ask our courtroom deputy to adjourn. Court stands adjourned. Thank you.